# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

          Plaintiff,                               No.  CR 15-1020 MV

vs.

ANGEL DIAZ-RIVERA,

          Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

After 21 years of steady employment as a truck driver in Tijuana, Mexico, Angel Diaz-Rivera was laid off and struggled to find a new job.  He spent months searching in vain trying to find employment before he ultimately accepted an offer to transport what he believed to be marijuana from San Diego to New York in a desperate attempt to earn enough money to support his family.  When he was apprehended in Albuquerque, New Mexico, Mr. Diaz readily admitted to his involvement in this foolish plan.

Mr. Diaz respectfully requests that this Honorable Court depart or vary from the sentence recommended by the United States Sentencing Guidelines to a sentence of thirty months in the custody of the United States Bureau of Prisons. Mr. Diaz submits that a departure or variance is warranted in light of his complete

absence of any criminal history, his consistent acceptance of responsibility and his status as a deportable alien who will be denied many of the benefits given to United States citizens who are in the custody of the Bureau of Prisons.

### *Objections to the Pre-Sentence Report*

With the exception of the single objection listed below, Mr. Diaz has no objections to any of the factual assertions in the Pre-Sentence Investigation Report and there are no other factual disputes which would require this Honorable Court to convene an evidentiary hearing pursuant to Rule 32(i)(2) of the Federal Rules of Criminal Procedure.  However, despite the absence of any factual objections to the Pre-Sentence Investigation Report, Mr. Diaz does object to the failure to award him a two-level adjustment in his offense level under section 2D1.1(b)(17) of the Guidelines.

Mr. Diaz qualifies for a two-level reduction in his base offense level under section 2D1.1(b)(17) because he meets all of the criteria for the "safety valve" set out in 18 U.S.C. § 3553(f) and Section 5C1.2 of the Guidelines.  Mr. Diaz does not have more than one criminal history point, he did not use violence or a dangerous weapon during the commission of the offense, the offense did not result in death or serious bodily injury, Mr. Diaz was a minimal participant in the charged offense and, on May 18, 2015, he truthfully provided to the Government all of the

information which he had surrounding the charged offense; therefore Mr. Diaz

should be able to receive a two-level reduction in his offense level under section

2D1.1(b)(17).

### *Statement of Facts*

Angel Diaz-Rivera was one of eight children born to Angel Diaz-Garcia and

Maria de Conseuelo Rivera-Garcia.  Mr. Diaz was raised in Tijuana, Mexico and

(like a third of the population of Baja, California) he grew up in poverty.

Although his father struggled to earn enough money to provide for all of the

family's basic needs, Mr. Diaz nonetheless recalls that he experienced a happy

childhood.

Mr. Diaz was only able to complete the Tenth Grade of schooling in

Mexico.  He left school as soon as he was able to work so that he could earn

money to assist his struggling family.

When he was 31 years old, Mr. Diaz met and married Marta Montoya and

together the two have a daughter, Juliana, who is nine years old.  Mr. Diaz, his

wife and his daughter live with Mr. Diaz's parents in Tijuana.

For twenty-one years Mr. Diaz worked as a truck driver in Tijuana.  Mr.

Diaz usually worked as an independent contractor, arranging to deliver

construction materials throughout Baja, California.  However in 2013 Mr. Diaz

went to work for a factory in Tijuana because it was becoming more difficult to obtain work as an independent contractor.  Mr. Diaz worked for the factory for two years but he left the company in the beginning of 2015 because there was simply not enough work to support his family.

After leaving his factory job, Mr. Diaz spent almost two months trying to find work as a truck driver, but he was not successful.  Ultimately Mr. Diaz was referred to an individual in Tijuana who was ostensibly looking for a driver. However, when he applied for a job, Mr. Diaz discovered that the man was looking for people to transport marijuana from San Diego, California to New York City.  The man promised Mr. Diaz he would be paid $800 for his work.  Desperate to support his family, Mr. Diaz agreed to the plan.

On March 13, 2015, Mr. Diaz was questioned by DEA Special Agent Jay Perry while he was riding on a Greyhound Bus which was traveling through Albuquerque.  Mr. Diaz gave Agent Perry permission to search his back pack and his checked luggage.  When Agent Perry searched Mr. Diaz's checked luggage, he discovered what Agent Perry believed to be cocaine or methamphetamine.  Mr. Diaz was arrested and in a post-arrest interview he told the Agents he was to be paid $800 to transport what he believed to be marijuana.

### *Argument*

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States,* 528 U.S. 81, 113 (1996). Therefore, a sentence in a criminal case must be both reasoned and reasonable, based an assessment of the statutory factors delineated in 18 U.S.C. § 3553(a), including the nature of the offense, the history and circumstances of the defendant and the need for the criminal sentence to promote respect for the law, provide a just punishment and afford adequate deterrence. 18 U.S.C. § 3553(a)(2). To impose a reasonable sentence, a District Court must consider the factors set forth in 18 U.S.C. section 3553 and then select a sentence that is "sufficient, but not greater than necessary" to fulfill the sentencing goals established by the United States Congress. *United States v. Mateo,* 471 F.3d 1162, 1163 (10th Cir. 2006).

Sentencing judges exercise "a wide discretion" in the types of evidence they may consider when imposing sentence and may consider all available information which bears on the defendant's life and personal characteristics. *Pepper v. United States,* 562 U.S. 476, 490 (2011). Consequently there is no limitation on the

information which may be offered concerning the background, character and conduct of the defendant.  18 U.S.C. § 3661.

To impose a sentence which is just and reasonable, a District Court should begin every sentencing proceeding by correctly calculating the applicable Guidelines range and then consider the sentencing factors set out in 18 U.S.C. § 3553(a) to make an individualized assessment of the appropriate sentence based on all of the facts presented.  *Gall v. United States,* 552 U.S. 38 (2007).  A sentencing court must "give respectful consideration to the Guidelines" and the "Guidelines should be the starting point and initial benchmark" for any sentence. *Pepper,* 562 U.S. at 491.  However, following this proper application of the Guidelines, a District Court may tailor a sentence based on a careful consideration of all of the factors set out in 18 U.S.C. § 3553(a).  *Ibid.*

Mr. Diaz respectfully requests that the Court depart or vary from the sentence recommended by the United States Sentencing Guidelines for three reasons.  First Mr. Diaz asks the Court to consider his age, his long history of steady employment and his family ties and responsibilities in mitigation of his sentence.  Second, Mr. Diaz asks the Court to consider his status as a deportable alien and the concomitant denial of certain beneficial treatment which is afforded to U.S. citizens as a ground for a departure or variance.  Finally, Mr. Diaz asks the

Court to consider his prompt acceptance of responsibility and his consistent

cooperation with law enforcement as a final justification for a reduced sentence.

## I.    AGE, EMPLOYMENT AND FAMILY TIES

The United States Sentencing Guidelines recognize that a defendant's age

(USSG § 5H1.1), employment record (USSG §5H1.5) and family ties and

responsibilities (USSG § 5H1.6) may be relevant in determining whether a

departure is warranted, especially when those factors are considered in

combination.   See, e.g., *United States v. Jones,* 158 F.3d 492 (10th Cir. 1998).

Moreover*, in Gall vs. United States,* 552 U.S. 38, 47 (2007), the United States

Supreme Court recognized that these factors need not be present to an

extraordinary degree to justify a variance of a sentence under 18 U.S.C. §

3553(a)(1).

Mr. Diaz was forty years old at the time he committed the charged offense.

Prior to this crime, Mr. Diaz has had no involvement with the criminal justice

system either in the United States or Mexico.  Mr. Diaz's age demonstrates both

that the present offense represents an aberrant act in an otherwise law abiding life

and also indicates that he is less likely to recidivate.  See, e.g., VERA Institute of

Justice, "It's About Time: Aging Prisoners, Increasing Costs and Geriatric

Release," p. 5 Center on Sentencing and Corrections April 2010.

In addition, a defendant's "long and impressive work history in a situation where good jobs are scarce" is a factor which a Court can consider as the basis for a departure or a variance. *Jones,* 158 F.3d at 498.  This is especially true where the defendant's long-term employment history is one of many factors which demonstrate that the offense conduct was aberrational. *See, United states v. Tsosie,* 14 F.3d 1438, 1441-42 (10th Cir. 1994).

Despite his limited education, and even though a considerable portion of the population of Baja California live in poverty, Mr. Diaz was able to maintain employment as a truck driver for over twenty-one years.  It was only when the job opportunities for independent truck drivers began to vanish that Mr. Diaz made the foolish and desperate decision to transport what he believed to be marijuana.

Finally, a defendant's family ties and responsibilities may be relevant to a consideration of a departure or a variance , especially if the defendant's incarceration will pose an unusual hardship on his family. *United States v. Rodriguez-Velarde,* 127 F.3d 966, 968-69.  This is especially true where the incarcerated defendant may be the sole support of his family.  Cf. *Jones,* 158 F.3d at 499.

Mr. Diaz was motivated to commit this crime, not out of a desire to benefit himself personally, but in a desperate attempt to earn money to support his family

-8-

while he was unemployed.  Now his family faces the prospect of losing the sole

breadwinner for two to three years.  In combination with his age and long

employment history, Mr. Diaz's family ties and responsibilities further justify a

departure or a variance.

## II.   DEPORTABLE ALIEN STATUS

A court has the discretion to consider a defendant's status as a deportable

alien as a basis for a downward departure or a variance.  *United States v. Pacheco-*

*Soto,* S386 F.Supp.2d 1198, 1204-05 (D.N.M. 2005), citing *United States v.*

*Lopez-Salas,* 266 F.3d 842, 846-51 (8th Cir. 2001) and *United States v. Farouil,*

124 F.3d 838, 847 (7th cir. 1997).  Such a departure or variance may be warranted

"to avoid unwarranted sentence disparities among defendants with similar records

who have been found guilty of similar conduct."  *United States v. Charry*

*Cubillos,* 91 F.3d 1342, 1344 (9th Cir. 1996), see also 18 U.S.C. §(a)(6).

Because of Mr. Diaz's status as a deportable alien, he faces a unwarranted

increase in the severity of his sentence.  He will not be eligible for early release, he

will not be able to be assigned to a minimum security prison and he will not be

able to obtain any sentence reduction based on his participation in a residential

drug abuse program.  Consequently, this Court may take account of Mr. Diaz's

deportable alien status and its severe collateral consequences in formulating a just

and reasonable sentence.

### III.   EXTRAORDINARY ACCEPTANCE OF RESPONSIBILITY

A District Court may also consider a defendant's extraordinary acceptance

of responsibility in determining whether to vary from the sentence recommended

by the Guidelines, despite the prohibition in the Guidelines which limit such

departures to those authorized by sections 3E1.1 and 5K1.1.  *United States v.*

*Severino,* 454 F.3d 206, 211 (3rd Cir. 2006), *see also United States v. Jones,* 158

F.3d 492, 498 (10th Cir. 1998).  "Courts may grant additional consideration to

defendants who demonstrate acceptance beyond that necessary to obtain a two or

three level reduction under § 3E1.1 because such conduct bears directly on their

character and on how severe a sentence is necessary to provide deterrence and

punishment."  *United States v. Severino, supra,* 454 F.3d at 211, *citing United*

*States v. Milne,* 384 F.Supp.2d 1309, 1312 (E.D.Wis. 2005).[1]

From the moment he encountered Agent Perry, Mr. Diaz cooperated with

the investigation of this offense.  He gave Agent Perry consent to search his

---

[1]  A defendant demonstrates a more profound and enduring acceptance of responsibility
when his post-arrest cooperation facilitates the efficient administration of the criminal justice
system and protects the public from additional criminal activity.  M O'Hear, "Remorse,
Cooperation and 'Acceptance of Responsibility;' The Structure, Implementation and Reform of
Section 3E1.1," 91 N.W.U.L.Rev. 1507, 1511 (1997).  Active cooperation to redress prior wrong
demonstrates a more exceptional acceptance of responsibility which provides "a sound indicator
of rehabilitative potential."  *Id.* at 1515.

checked luggage, thereby relinquishing the protections of the Fourth Amendment. When he was arrested, he waived his Fifth Amendment rights to remain silent, and admitted that he was to be paid $800 to transport marijuana rom San Diego to New York.  Finally, once his Motion to Suppress was denied, Mr. Diaz pled guilty and waived his right to pursue any further appeals.  These acts of acceptance justify a departure or a variance.

Mr. Diaz respectfully submits that a sentencing regime which punishes those who obstruct justice (USSG § 3C1.1) should likewise reward those who facilitate the administration of justice through acts beyond the mere entry of a plea of guilty.  Instead, Mr. Diaz submits that a departure or variance is appropriate for those defendants who are honest in all of their encounters with law enforcement.

WHEREFORE, for all of the foregoing reasons, Defendant Angel Diaz-Rivera respectfully requests that this Honorable Court reduce his offense level by two-levels under section 2D1.1(b)(17) and then depart or vary to a sentence of thirty months in the custody of the United States Bureau of Prisons.

Respectfully Submitted,

/s/ *Brian A. Pori* filed electronically 7/26/16
Brian A. Pori
Assistant Federal Public Defender
111 Lomas Blvd NW, Suite 501
Albuquerque, N.M. 87102-2373
(505) 346-2489 [telephone]

Counsel for Angel Diaz-Rivera

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of July, 2016, I filed the

foregoing Defendant's Sentencing Memorandum through the CM/ECF system,

which caused a copy of the pleading to be served electronically on opposing

counsel of record addressed as follows:

Joel Meyers, Esq.
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103

/s/ filed electronically 7/26/16
Brian A. Pori

-12-