IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ANGEL IBES DIAZ-RIVERA, )<br>)<br>Defendant. ) | No. 15-CR-1020 MV |

**UNITED STATES' OBJECTION TO THE PRESENTENCE REPORT AND SENTENCING RECOMMENDATION**

Defendant Angel Ibes Diaz-Rivera is scheduled to be sentenced before this Court on September 21, 2016. The United States hereby responds to defendant's sentencing recommendation, objects to the Presentence Report (PSR), and recommends a sentence of 87 months of imprisonment followed by five years term of supervised release, and as grounds therefor states as follows:

**FACTUAL BACKGROUND**

On March 13, 2015, Drug Enforcement Administration (DEA) Special Agent (SA) Jarrell "Jay" Perry and DEA Task Force Officer (TFO) Pedro Gutierrez were at the Greyhound Bus Station in Albuquerque when an eastbound Greyhound Bus arrived for its regularly scheduled stop. SA Perry approached a man, later identified as defendant, who was sitting in his seat on the bus. SA Perry displayed his DEA badge, identified himself as a police officer, and asked for and received permission to speak with defendant.

1

After a short conversation, SA Perry asked defendant if he had any luggage with him. Defendant said that he had one piece of luggage stored underneath the bus. SA Perry asked for and received permission from defendant to search his luggage for contraband. SA Perry located a black, expandable bag with a Greyhound luggage tag attached. The luggage tag had the name of "Angel I. Diaz" -- the name under which defendant was travelling -- written on it.

A consensual search of the bag revealed a false compartment in the bottom which contained a clear heat-sealed plastic bundle. SA Perry knew from his training and experience that the bundle and packaging were consistent with illegal drugs. Defendant was then placed under arrest.

Agents then transported defendant to the DEA Albuquerque District Office (ADO), along with his personal property. At the DEA ADO, SA Perry and TFO Gutierrez removed the clear plastic heat-sealed bundle from inside of the compartment of defendant's bag. SA Perry and TFO Gutierrez cut open the bundle, which revealed a whitish-colored powdery substance. The weight of the substance was approximately 3.10 gross kilograms. A subsequent laboratory examination revealed that the substance was approximately 2,900 grams of fentanyl.[1]

While at the DEA ADO, TFO Gutierrez read defendant his *Miranda* rights in the Spanish language. Defendant said that he understood his rights and agreed to answer questions. Defendant admitted that he was being paid $800 to transport the substance to New York and offered the self-serving statement that he believed that he was transporting marijuana.

---

[1] Fentanyl is a powerful synthetic opiate analgesic similar to, but more potent than, morphine. Mixing fentanyl with street-sold heroin or cocaine markedly amplifies their potency and potential dangers. http://www.drugabuse.gov/drugs-abuse/fentanyl.

**PROCEDURAL BACKGROUND**

On January 22, 2016, and with the benefit of a plea agreement (Doc. 37), defendant pleaded guilty to an Indictment charging him with Possession with Intent to Distribute Fentanyl, a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Pursuant to the plea agreement, the parties stipulated that defendant's base offense level is 32. See Doc. 37 at ¶ 13(a).

On May 23, 2016, the United States Probation Office ("Probation") disclosed defendant's PSR.  Probation recommended that a "minimal" role adjustment be applied pursuant to USSG § 3B.12.  See PSR at ¶ 25.  As a result of the role adjustment and its treatment under USSG § 2D1.1, Probation calculated defendant's total offense level at 23.  See PSR at ¶ 30.  As more fully discussed below, the United States objects to the total offense level and believes it should be 27 (after the application of USSG § 2D1.1(b)(17)).[2]  Defendant's criminal history points were calculated at one, which resulted in a criminal history category of I.  Id. at ¶ 34.

**PSR OBJECTION**

**Objection No. 1:**    The United States objects to defendant receiving a "minimal" role adjustment pursuant to USSG § 3B1.2.    Probation provided absolutely no justification for the application of the role adjustment.    Instead, in conclusory fashion, Probation merely applied the adjustment.  See PSR ¶ 24.    Additionally, it is defendant's burden to prove the propriety of the role adjustment.    United States v. Ayers, 84 F.3d 382 (10th Cir. 1996); United States v. Carter, 971 F.2d 597 (10th Cir. 1992).    A burden he has not met.

After his arrest, defendant provided a self-serving statement that he was unaware of the exact contents of the package he was delivering.    Assuming *arguendo* that defendant is in fact a

---

[2] The United States agrees that defendant meets the criteria of USSG § 5C1.2.

courier, that alone does not entitle defendant to a "minor" role adjustment, let alone a four-level "minimal" role adjustment.   See United States v. Martinez, 512 F.3d 1268, 1276 (10th Cir. 2008) (declining to adopt a *per se* rule allowing a downward adjustment solely based on status as a courier); see also United States v. Santos-Garcia, 313 F.3d 1073 (8th Cir. 2002); Nichols v. United States, 75 F.3d 1137 (7th Cir. 1996); United States v. Shonubi, 998 F.2d 84 (2nd Cir. 1993).   Indeed, the Tenth Circuit's justification for the prohibition for such a rule is that "[d]rug couriers are an indispensable component of drug dealing networks."   Id.   Put more colorfully, "[t]o debate whether couriers as a group are less culpable would not be productive, 'akin to the old argument over which leg of a three-legged stool is the most important leg." Martinez, 512 F.3d at 1278 (quoting United States v. Carter, 971 F.2d 597, 600 (10th Cir. 1992)).

## SENTENCING CONSIDERATIONS

Under 18 U.S.C. § 3553(a), "[t]he Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).[3] Those purposes are "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."   18 U.S.C § 3553(a)(2).   In determining that sentence, this Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), "the kinds of sentences available," §

---

[3] This "overarching provision" and "general directive" of § 3553(a), Kimbrough v. United States, 552 U.S. 85 (2007); Gall v. United States, 552 U.S. 38 (2007), is sometimes referred to as the "parsimony provision."

3553(a)(3), the Guidelines and Guidelines range, § 3553(a)(4), the Guidelines' policy statements, § 3553(a)(5), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6), and "the need to provide restitution to any victims of the offense," § 3553(a)(7).

**I.     A sentence of 87 months is appropriate.**

A total offense level of 27 and a criminal history category of I yields a recommended Guidelines sentence of 70 to 87 months.   Examination of the § 3553(a) factors demonstrates that such a sentence is warranted here.

"The fact that § 3553(a)[(4)] explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 597 n.6. Indeed, "the sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the [Guidelines range] with reference to the latter."   Nelson, 555 U.S. at 350.

Here, it is the government's position that defendant's total offense level should be 27, not 23 as recommended by Probation, and not 21 as implied by defendant.   A sentence within the properly-calculated range of 70 to 87 months is appropriate here and it is supported by the other § 3553(a) factors.   Indeed, one of the Sentencing Commission's purposes in promulgating the Guidelines was to "assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2)."   28 U.S.C. §§ 991(b)(1)(A), 994(f).   The Commission wrote the Guidelines to "carry out these same § 3553(a) objectives," resulting in "a set of Guidelines that seek to embody the § 3553(a) considerations, both in principle and in practice."   Rita v. United States, 551 U.S.

5

at 350.  A sentence of 87 months firmly embodies those considerations.  Such a sentence is further supported by the fact that the Guidelines reflect the views of Congress through its instructions to the Commission.  The resulting effort of the Commission is to "establish a sentencing range that is consistent with all pertinent provisions of Title 18." See, e.g., 28 U.S.C. §§ 991(b), 994(b)(1), (h)-(*l*), (p).  Congress' review of all Guidelines before they take effect and Congress' direct input into certain Guidelines further supports the contention that the Guidelines embody the will of the Legislature.

Like Congress, the Judiciary had input into the Guidelines directly as Commission members and commentators, and indirectly through the Commission's ongoing and "careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." Gall, 552 U.S. at 45; 28 U.S.C. §§ 994(o)-(p).  "The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." Rita, 551 U.S. at 349.  As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" Kimbrough v. United States, 552 U.S. 85, 96 (2007); 28 U.S.C. § 994(m).  In so doing, the Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise,'" and "to formulate and constantly refine national sentencing standards." Kimbrough, 552 U.S. at 108.  Accordingly, courts must give "respectful consideration to the Guidelines." Id. at 101.

Additionally, as the Supreme Court has emphasized "where judge and Commission both determine that the Guidelines sentences is an appropriate sentence for the case at hand, that

sentence likely reflects the § 3553(a) factors (including its 'not greater than necessary' requirement)," and that "significantly increases the likelihood that the sentence is a reasonable one." Rita, 661 U.S. at 347.   The sentence requested by the government is firmly grounded in the government's application of the Guidelines.

An 87-month sentence is also warranted here because the other relevant § 3553(a) factors strongly support such a sentence.

### A.  Seriousness of the Offense

The government's requested sentence here reflects "the seriousness of the offense." 18 U.S.C. § 3553(a)(2)(A).   The seriousness of the offense to which defendant stands convicted cannot be underestimated.   The United States is in the midst of a fentanyl crisis with more known fentanyl-related deaths than at any other time since the drug was first created in 1959. Between late 2013 and late 2014 alone, there were over 700 deaths related to fentanyl in the United States.[4]   In addition to being deadly to users, fentanyl poses a grave threat to law enforcement officials and first responders, as a lethal dose of fentanyl (3 mg) can accidently be inhaled or absorbed through the skin.   The seriousness of the possession with intent to distribute three kilograms, or **3 million potentially lethal doses**, of fentanyl can hardly be debated.

### B.  History and Characteristics of Defendant

The history and characteristics of defendant do little to justify the offense.   Defendant is a life-long resident of the Republic of Mexico choosing the citizens of the United States as the potential victims of his crime.   While many residents of Mexico suffer a difficult upbringing and economic hardship, defendant "had a good childhood," "he was cared for and" his "basic

---

[4] This figure is largely believed to be underestimated due to variations in state reporting techniques.

necessities were met." PSR at ¶ 40. Defendant's stable marriage, 21 years of consistent employment, a spouse who works and good health further underscore the senseless nature of his crime. See PSR at ¶¶ 41, 43 and 46.

The only justification offered by defendant is that this was a "desperate attempt to earn money to support his family." Doc. 42 at 8-9. While an understandable reason in theory, it is supported only by defendant's self-serving statements. The objective facts contained in defendant's PSR hardly support this proffered reason. Defendant's long-term employment, lack of substance abuse history, and stable family simply suggest a man who was looking for an "opportunity to make quick money[,]" PSR at ¶ 16, at the expense of the many people who suffer from substance abuse in the United States of America.

Defendant also asks this Court to consider his status as a non-US citizen by way of mitigation. Essentially he is arguing that uninvited guests who do not enjoy the benefit of citizenship in the United States and only come here to commit crimes are somehow worthy of a lesser sentence than those who enjoy the privileges of United States citizenship. His argument reads like he is entitled to benefits based exclusively on his having committed a crime in this country. It is indeed unlikely that such an argument would be persuasive with any number of other countries, and it should not carry weight here.

Finally, defendant advances an argument which he calls "extraordinary acceptance of responsibility." This argument strains credibility. While defendant appears to have been "cooperative" in that he consented to a search of his bag and provided a self-serving post-arrest statement, his "cooperation" stopped there. Contrary to defendant's motion (Doc. 42 at 10), defendant did not "cooperate[] with the investigation of this offense." Id. Defendant offered little information about the person from whom he received the fentanyl and about the person to

whom he was distributing it.    Additionally, as the Court will no doubt recall, defendant also strenuously litigated a suppression motion which was little different than proceeding to trial.  This is hardly conduct becoming of extraordinary acceptance.    His waiver of appeal notwithstanding, defendant did little to conserve judicial resources and advance the smooth administration of justice.

### C.  Respect for the law and just punishment

Given defendant's offense, an 87-month sentence is needed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A); see Gall, 552 U.S. at 54 (it is a "legitimate concern that a lenient sentence for a serious offense threatens to promote disrespect for the law").

### D.  Protecting the public

The recommended sentence is also needed "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).    Even if this Court could somehow be assured that defendant would not succumb – once again – to the temptation of "easy money," the requested sentence is needed "to afford adequate deterrence to criminal conduct" by others.    18 U.S.C. § 3553(a)(2)(B).    The Guidelines' disallowance of the option of probation, while advisory, should also be given some weight.    See United States v. Goldberg, 491 F.3d 668, 673 (7th Cir. 2007) ("When the Guidelines, 'drafted by a respected public body with access to the best knowledge and practices of penology, recommend that a defendant be sentenced to a number of years in prison, a sentence involving no ... imprisonment can be justified only by a careful, impartial weighing of the statutory sentencing factors.'").

WHEREFORE, the United States urges the Court to sentence defendant to 87 months of imprisonment to be followed by a 5-year term of supervised release.

        Respectfully submitted,

        DAMON P. MARTINEZ
        United States Attorney

        /s/
        Joel R. Meyers
        Assistant United States Attorney
        P. O. Box 607
        Albuquerque, NM   87103
        (505) 346-7274

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2016, I filed the foregoing document electronically through the CM/ECF system.   Pursuant to the CM/ECF Administrative Procedures Manual, §§ 1(a), 7(b)(2), such filing is the equivalent of service on parties of record.

                /s/
Joel R. Meyers
Assistant United States Attorney